755 So.2d 12 (1999)
Lester A. LLOYD a/k/a Lester Anthony Lloyd a/k/a Lester Loyd, Appellant,
v.
STATE of Mississippi, Appellee.
No. 97-KA-00902-COA.
Court of Appeals of Mississippi.
May 4, 1999.
*13 Rebecca G. Taylor, Attorney for Appellant.
Office of the Attorney General By Pat S. Flynn, Attorney for Appellee.
BEFORE McMILLIN, C.J., DIAZ, IRVING, AND PAYNE, JJ.
DIAZ, J., for the Court:
¶ 1. Lester A. Lloyd appeals the decision of the Lincoln County Circuit Court convicting him of touching a child for lustful purposes. Lloyd raises the following issues in this appeal: (1) whether the trial court erred when it failed to allow redirect questioning by defense counsel as beyond the scope of cross-examination and (2) whether the jury's verdict was against the overwhelming weight of the evidence. Finding no error, we affirm.

FACTS
¶ 2. Lloyd was indicted for the molestation of twelve year old C.B. This act purportedly occurred on May 23, 1996, in the home of Robert Earl Lloyd, the defendant's brother and C.B.'s uncle by marriage. C.B. was spending the night with his aunt and uncle and sleeping in a room that had twin beds with his second cousin, Cedric Barnes. On the night Lloyd spent the night at his brother's house, he slept in the same room as Barnes and C.B. On that night, C.B. slept on a pallet on the floor.
¶ 3. C.B. testified that he was awakened in the night by Lloyd whose hands were in his shorts and around his penis. Additionally, he said something wet was on his chest. C.B. stated that he got up and went into the den where his aunt and uncle were sleeping. He told them what happened in the bedroom, but his uncle told him to return to bed. C.B. refused to go back into the bedroom. Robert Earl spoke with Lloyd in the bedroom. C.B. called his mother and told her that he was coming home. Robert Earl drove C.B. home, where C.B. told his mother that Lloyd had been "messing with him." *14 F.M., C.B.'s mother, testified to these events as well.
¶ 4. Cedric Barnes testified that he was sleeping in a twin bed opposite from Lloyd and that, if Lloyd had gotten out of bed, he would have known. He stated that he heard no commotion and no movement. However, on cross-examination, Cedric admitted that he slept until the next morning and that he did not hear Robert Earl enter the bedroom and talk with Lloyd. During redirect examination, the trial judge sustained an objection to questions asked of Cedric by defense counsel that were outside the scope of the cross-examination.
¶ 5. Robert Earl testified that C.B. came into the den and only told him that Lloyd had put some water on his chest. Robert Earl further stated that he awakened Lloyd and brought him into the den. Lloyd asked C.B. what he had done to him, but C.B. would not answer. Thereafter, Robert Earl took C.B. home. Johnnie Mae Lloyd, C.B.'s aunt, also testified that C.B. told Robert Earl that Lloyd put wet stuff on his chest. However, she said that she did not see anything wet on C.B.'s chest.
¶ 6. Sharon Edge, Lloyd's cousin, testified that Lloyd had helped Edge raise her children without any problems of this nature. Edge also testified that Lloyd had a good reputation in the community. After a bench conference, the State asked Edge if she knew that Lloyd had been charged with numerous felonies to which she answered affirmatively. On redirect, it was established that Lloyd had not been convicted upon any of these charges.
¶ 7. Lloyd testified that he was asleep until his brother Robert Earl came into the room and awakened him. He denied molesting C.B. in any way.
¶ 8. After a jury trial, Lloyd was found guilty of touching C.B. for a lustful purpose and sentenced to serve a term of five years with two years suspended and five years probation, plus compliance with the Sex Offenders Act, Miss.Code Ann. § 45-33-1 (Rev.1993), pay a fine, and pay court costs. Feeling aggrieved, Lloyd perfects this appeal.

DISCUSSION

I. WHETHER THE TRIAL COURT ERRED WHEN IT FAILED TO ALLOW REDIRECT QUESTIONING BY DEFENSE COUNSEL AS BEYOND THE SCOPE OF CROSS-EXAMINATION
¶ 9. "The scope of redirect examination, while largely within the discretion of the trial court, is limited to matters brought out during cross-examination." Blue v. State, 674 So.2d 1184, 1212 (Miss. 1996) (citing Evans v. State, 499 So.2d 781 (Miss.1986)). Also, we will not disturb a trial court's ruling on matters pertaining to redirect examination unless there has been a clear abuse of discretion. Blue, 674 So.2d at 1212. When a trial court prevents the introduction of certain evidence, it is incumbent that a proffer be made of the potential testimony of the witness or the point is waived for appellate review. Evans v. State, 725 So.2d 613 (Miss.1997). Since no proffer was made of Cedric Barnes's testimony, Lloyd waives this issue on appeal. Nonetheless, the questions asked on redirect elicited the same information as those questions asked by defense counsel during the direct examination. Furthermore, the trial court determined that the information sought on redirect did not refer to anything brought out during cross-examination. Therefore, despite the procedural bar, this issue appears to be without merit.

II. WHETHER THE JURY'S VERDICT WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE
¶ 10. To test whether the verdict was against the overwhelming weight of the evidence we do not sit as jurors on appeal, but our task is to determine whether the evidence was so overwhelmingly against the jury's verdict that an unconscionable *15 injustice has occurred. Groseclose v. State, 440 So.2d 297, 300 (Miss. 1983). We will not order a new trial unless this Court is convinced that "the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would be to sanction an unconscionable injustice." Noe v. State, 628 So.2d 1368, 1369 (Miss.1993) (quoting Wetz, 503 So.2d at 812).
¶ 11. "[T]he jury is the sole judge of the credibility of witnesses, and the jury's decision based on conflicting evidence will not be set aside where there is substantial and believable evidence supporting the verdict." Nicholson v. State, 523 So.2d 68, 70 (Miss.1988) (citation omitted). The jurors resolved fact questions reasonably in favor of the State. The jury may choose to believe or disbelieve any testimony presented and attach as much or as little weight to a particular piece of evidence as they wish. The jury's finding that Lloyd was guilty of touching a child for lustful purposes was supported by the evidence. The jury evidently found that he touched C.B. in the middle of the night, and the record clearly supports such a position. Therefore, affirming Lloyd's conviction of touching a child for lustful purposes is hardly a sanction of unconscionable injustice. This Court concludes that the verdict in the case is neither contrary to nor against the overwhelming weight of the evidence; therefore, this issue is without merit.
¶ 12. THE JUDGMENT OF THE LINCOLN COUNTY CIRCUIT COURT OF CONVICTION OF TOUCHING A CHILD FOR LUSTFUL PURPOSES AND SENTENCE OF FIVE YEARS WITH TWO YEARS SUSPENDED AND FIVE YEARS PROBATION TO SERVE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND FINE OF $5000 IS AFFIRMED. COSTS OF THIS APPEAL ARE TAXED TO LINCOLN COUNTY.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, COLEMAN, IRVING, LEE, PAYNE, AND THOMAS, JJ., CONCUR.